SIMS
vs.
LIVELY.

"the following sums of money."

---

## Sims vs. Lively.

### ERROR TO HART CIRCUIT.

Case 16.

1. Where no duty is imposed upon an executor, as executor, but upon him as a devisee under the will, he is liable only as devisee, and not as executor, and there is no liability upon his sureties as executor.

2. Where the will provided that certain devisees, out of a devise of land and slaves made to them, with the aid of another fund, not certain, should purchase land in Illinois, and convey it to certain other persons, grandchildren of the testator, and also that the devisees, at their own expense, should educate said grandchildren—Held, that if there be a trust, (which is not decided,) it is not such a trust as would require that an innocent purchaser of the land, and ignorant of any fraud, should be bound to see to the application of the purchase money to the purchase of the Illinois lands.

3. Where there is an absolute devise of land to one, though he be appointed executor, and though, in consideration of the devise, a personal duty be imposed upon the devisee, it is only by construction and inference that the conclusion is arrived at that the purchaser must look to the application of the purchase money. There is no lien—such lien or express trust as would apprise a purchaser of its liability. The inference of liability is subject to be rebutted by circumstances showing its unreasonableness. Sugden, vol. 2, page 36.

SIMS
vs.
LIVELY.

4. To impose on a purchaser the duty of seeing to the application of the purchase money, "the trust must be of such a nature that the purchaser would reasonably be expected to see to the application of the purchase money." Such will be the case where land is charged with the payment of particular debts; but if not specified he is not bound—nor where it is to 'pay debts and legacies, which involves first the payment of all debts.

5. Where a trustee is invested with a discretion in the disposition of a trust fund, those who have confided should rather suffer than one who has purchased of one apparently having authority.

6. Where a trustee, in the performance of a duty, has a discretion, and the performance to be at a distant point, and after the lapse of some ten or twelve years, the purchaser is not bound to see to the application of the purchase money—he had no power over the trustee to compel its application, nor means of knowing what proportion of the devise was necessary to carry out the intention of the testator. There was no lien upon the land devised.

Samuel Finley, of Hart county, made his will in 1832, which was proved and admitted to record in the same year, by which he directed, first, the payment of all his debts, and disposed of the whole of the estate by specific provisions. In the seventh clause of the will, (at page 9,) a devise is made to two sons, Hardin and Preston Finley, of three hundred and fifty acres of land, four negro men, wagon, and farming utensils of every kind, two mares, and his entire stock of hogs; to which is appended these words: "It is my will and desire that my sons, Preston and Hardin Finley, out of the bequests above named to them made, purchase for my grandchildren, Preston Sims and Addison Sims, six hundred acres of good arable land, with a sufficiency of timber to support it, either in one, two, or more tracts, as my sons may think best for the children, in some good part of the state of Illinois. It is my will and desire that they collect the sums due to my said grandchildren, from the estate of their father, and that they have the use of that in making the purchase of the land aforesaid. It is my will and desire that my sons, Hardin and Preston, at their own expense, send the said Preston and Addison Sims to school until they shall have received a good English education, and that at the age of twenty-one years, each of said boys receive of them a good horse, bridle and saddle."

Hardin and Preston Finley were appointed executors of the will, and qualified and gave bond.

In 1839 Hardin and Preston Finley sold and conveyed the tract of land, devised to them by their father, to Henry P. Lively, for the consideration of $1,200, and put him in possession of it. The negroes they sold to others, some of whom are made defendants to this suit. In January, 1844, Preston Sims having arrived at the age of twenty-one years, filed this bill in chancery in the Hart circuit court against Hardin and Preston Finley, the two executors and devisees, and their sureties in their executorial bond, and against Lively, the purchaser of the land, and against some of those who had purchased some of the four negro men, in which is alleged the failure of the devisees and executors, H. and P. Finley, to give him the education directed by the will of his grand-father, to give the horse, saddle, and bridle, and to buy the six hundred acres of land in Illinois; and making Addison Sims, who was still a minor, also a defendant, as well as the other devisees of Samuel Finley; and asking the court to subject the three hundred and fifty acres of land in the possession of Lively, the purchaser, to the payment of the value of the land which was to be purchased in Illinois, the education, &c., which is alleged to have been withheld, and for general relief.

Addison Sims, on arriving at full age, filed his answer, making it a cross-bill, and uniting with Preston, prays for the same relief. Lively answered, denying notice, and controverting the relief sought. The case progressed to a final hearing in 1852, when the circuit judge dismissed the bill of Preston, and cross-bill of Addison, as to all the defendants except Hardin and Preston, the executors and devisees, and decreed against them the value of the land which was to be purchased in Illinois.

G. W. CRADDOCK, for plaintiffs—

Argued—1. That the estate devised to Preston and Hardin Finley is charged with the legacies to Preston and Addison Sims. The language of the testator is, that "it is my will and desire that my sons, Preston Finley and Hardin Finley, *out of the bequest above made to them, purchase for my grandchildren, &c.* Gardner v. Gardner, 3 *Mason's C. C. Rep.*, 215; *Jarman on Wills, side page,* 552, and authorities there cited, is referred to for the cases in which the purchaser is exonerated from seeing to the application of the purchase money; from all which the rule is laid down, "that a general direction to pay debts, no matter in what part of the will contained, operates to throw them upon the real estate," subject only to two exceptions—*side page,* 519:—1. Where the testator, after directing his debts to be paid generally, has provided a specific fund for that purpose—*side page,* 521. 2. Where the debts are directed to be paid by the executor, in which case, unless land be devised to them, it will be presumed that payment is to be made exclusively out of funds which, by law, go to the executor for that purpose—*side page,* 523.

2. It is no objection, which creates a lien or charge upon land, that the executor is also personally liable for the debt or legacy—*Mason's Rep.,* 209 *to* 214. The rule is the same whether the land itself is charged, or the rents and profits—*Jarman on Wills, side page,* 534. The foregoing principles are relied upon as applicable to this case.

3. It is urged that the lien did exist by the will, and the only question remaining is, did it follow the land into the possession of Lively, the purchaser?

By the will the whole estate is charged with the payment of debts; it is presumed that all are long since paid—no intimation in the record to the contrary. Lively takes the ground that a sale of the land was necessary to pay debts, and that it was necessary to do so to comply with the requisitions of the will in regard to the complainants, thereby admitting that he

was apprised of the fact that the executors had not complied with the trust.

It is admitted that where the charge to pay debts is general and not specific; that the purchaser, who is not effected by fraud or notice of the debts, is not bound to see to the application of the puschase money to the objects of the will; but the converse of the proposition is equally true, that when the creditors are named, or when the debts have been scheduled, and when the legacy is specific, that it becomes the duty of the purchaser to see to the application of the purchase money; and upon the purchase money being misapplied by the executor or trustee, the land is bound—*Spence's Equitable Jurisdiction, vol.* 2, *page* 880—where it is said: "It has already been noticed that in a court of chancery when a person purchases land bound by a trust, with notice of the trust, the land, generally speaking, will still be bound in the hands of the purchaser, and it has been considered in these cases that, as the trust is not only to sell, but to sell for the purpose of paying the charges, the purchaser ought, when he can, to see that the trust is performed in all its parts." Again, *on page* 385, *same book*, it is said: "When the trust is a charge for the payment of some specific debts only, or for the payment of legacies only, or of both specific debts and legacies, then the debts, as well as the legacies, are specific charges on the land, and the purchaser has the means of ascertaining to what particular charges his money is to be applied, and the persons from whom he may obtain a discharge are pointed out." Again, *page* 388, *same book:* "Where the estate is charged with legacies the purchaser is clearly liable to see to the application of the purchase money." In the case of *Gardner v. Gardner, supra,* Justice Story says: "As to this the settled distinction is, that if a trust is created for specific or scheduled debts, the purchaser is bound to see to the application of the purchase money." Again, *page* 219, he says: "Looking to the principle upon which the general doctrine

is founded, I am not able to perceive any difference between a direct trust to pay debts, and a charge upon land for the same purpose." Again, *page* 220, he says: "No authority has been cited which establishes any distinction between the case of a trust and a charge as to seeing to the application of the purchase money. I cannot but think that the current of authority, and the analogys of the law, ought to lead us to the rejection of any such distinction, as unsatisfactory in principle, and inconvenient in practice."

4. Actual notice is only necessary when the attempt is made to attach responsibilty to a purchaser in those cases, where the object of the trust, or subjects of it, are so indefinite as to relieve the purchaser from the burthen of seeing to the application of the purchase money; but where actual notice supplies the want of certainty and defiteness in the will itself, the responsibility attaches as fully as where the subjects and objects of the trust are specifically pointed out; actual notice is also important, where the executor or trustee fraudulently applies the proceeds of the sale.

In this case, the persons to whom the duty was to be performed were pointed out, as well as the duty to be performed, by the will. Whether the land had been bought in Illinois might have been known by the title deeds, and whether the grandsons were educated, as required, by inquiry.

The conveyance to Lively shows the derivation of title by his vendors. The land is devised to Preston and Hardin Finley, charged with the legacy to the complainants, or a devise to them, subject to a trust in favor of the complainants. In either case, it amounts to the same thing—a lien in equity has been created, from which it cannot be relieved until the trust is complied with.

5. It is insisted that the sureties of the executors are bound. It has been held by this court in the case of *Clay and Craig v. Hart*, 7 *Dana*, 10, that when lands are devised to executors to be sold, and the

proceeds to be applied to the use of the legatees, that the money arising from the sale is to be considered a legacy in the hands of the executors, and for which the sureties are responsible, and that, in such case, the legatees may elect to take the land instead of the money. *Gedges v. Western Bap. Theo. Inst.*, 13 *B. Monroe*, 530.

A reversal is asked.

B. & J. MONROE, for defendants—

1. We deny that this case belongs to that class of cases where the purchaser is bound to see to the application of the purchase money. The devise is to Preston and Hardin Finley, in fee, which confers a perfect right to sell, and they take as devisees not as executors, and as devisees they have full power to give full and complete discharges for the purchase money. *See* 3 *Sug.*, 103, *top page; Mylne & Kean*, 624; 4 *Vez., Jr.*, 99; 16 *Ib.*, 156; *Larue's heirs v. Larue's ex'or*, 3 *J. J. Marshall*, 160.

In the case of *Smith v. Guyon*, 1 *Bro. Ch. Cases*, 86, *side page*, the doctrine is thus stated : "When land is directed by will to be sold generally, and the money to be a part of the personal estate, the purchaser is not bound to see to the application of the money, but it is otherwise if it is to be paid in discharge of specified or scheduled debts, or if the estate is sold under the direction of the court, and the money is not paid into court." *Ithel v. Bean*, 1 *Vez.*, 215; *Gardner v. Gardner*, 3 *Mason*, 218; *Andrews v. Sparhawk*, 3 *Pick.*, 293; *Culpepper v. Austin*, 2 *Ch. Ca.*, 115, 251; *Spaulding v. Shalmer*, 2 *Vern.*, 301. From which it appears that even where the debts are particularized a purchaser shall not be bound to enter into the account if more of the estate is sold than is necessary. The foregoing cases being cases where there were devises to pay debts, either generally or scheduled, are not exactly like the case under consideration. The case under consideration is a case of a devise with other devises, charged with the payment of all the debts of

the testator, and a specific duty imposed upon the dev-isees of the land of buying land in Illinois with the property devised, aided by another fund, which is not defined.

In the case of *Jebb v. Abbet*, 1 *Bro. Chan. Cases*, 186, *n*, 2 *Ed.*, *cited in note Coke Litt.* 290, 14 *Ed.*, the Lord Chancellor said : "Where debts and legacies are charged on land, the purchaser will hold, free from the claim of legatees ; for not being bound to see to the discharge of debts, he cannot be bound to see to the discharge of legacies which are not to be paid till after the debts. *Wormly v. Wormly*, 8 *Wheat.* 421, 442–3 ; 16 *Vez.*, 156 ; *Sug. on Vend.*; *chap.* 11, *sec.* 1, *page* 517, 535, 9 *Ed;* 1 *Cruise's Dig.*, 542 ; 1 *Vez.*, 173 ; 3 *Monroe*, 512.

Judge Story says in *Wormly v. Wormly*, *supra*, "there is much reason in the doctrine that when the trust is defined in its object, but the purchase money is to be re-invested upon trusts which require time and discretion, or the acts of sale and re-investment, are manifestly contemplated to be at a distance from each other, the purchaser will not be bound to look to the application of the purchase money—see *Cond. Rep.*, 480.

This will directs the payment of all the testator's debts ; it does not appear that any part of the estate was undevised. The executors were to pay the debts, and out of the devises to them to buy lands in Illinois for the grandsons, and to school them "at their own expense." They were to draw to their aid the money due to the grandsons from their father's estate. The amount of this fund no where appears—it cannot be presumed to have been in the knowledge of Lively, the purchaser of the land; the devisees could not know themselves without a settlement of that estate. Was it necessary that the purchaser should, or could he call for a settlement of the estate before he could safely pay for the land ? It is supposed not.

2. The property devised to Preston and Hardin Finley consisted of land, slaves, wagons, horses, &c.

The executors had, as devisees, full power over the whole property devised to them so soon as the will was proved; they thenceforth held that devised to them as devisees, not as executors; and the sureties of the executors are in no way responsible for the action of the devisees, though they be executors also.

If the devises made to the two sons, Preston and Hardin, had been to third persons, charged as it was, it would have been the duty of the executors to deliver it over; it being to them they are presumed to take it as devisees, not as executors. In the case of *Clay & Craig v. Hart*, 7 *Dana*, 11, 12, it is said, that when a discretionary power is given to an executor to sell, which he exercises, the sureties in his bond, as executor, with the condition prescribed by the statute, are not responsible for his disposition of the proceeds. The proceeds of land thus sold does not become a legacy; he holds the proceeds as trustee, not as executor; the condition of the bond is to "pay all the legacies." The sureties of the executor may be bound for the debts and legacies if there be assets, but not to pay charges upon devises though they be the devisees.

We insist that the purchaser was not bound to see to the application of the purchase money to the purchase of lands in Illinois, or to the education of the complainants; nor are the sureties of the executors bound for the performance of the duties imposed by the will upon Preston and Hardin Finley, as devisees, and that the case, on these points, should be affirmed.

BARRET and WOOD, for defendant, Lively—

The will of Samuel Finley conveyed to Hardin and Preston Finley, unconditionally, a clear and perfect title to the tract of land, with right of immediate sale. This is manifest—1. From the terms of the devise, considering it separately, and without reference to any other part of the will; nothing like a condition is expressed or inferable from its terms. 2. This is

more apparent from the proximity of this devise to others in the will, and the contrast between them. Take for example the devise to Mrs. Hobgood, of two negroes, which he bequeaths to his daughter, "upon her or her husband paying to his daughter, Virginia Wyatt, $100, and to his daughter, Caroline Finley, $100," her title is to be complete when these sums are paid, and not until then. Again, in the 7th item, the testator gives to his sons, Hardin and Preston, "the chestnut sorrel mare upon their paying John Wyatt fifteen dollars." The conclusion is, that the bequests of the negroes to Mrs. Hobgood, and the sorrel mare to the Finleys, were intended to be, and in fact were bequests upon condition; whereas, in the devise of the land and slaves, and all other property except the mare, the testator intended to devise, and did devise it absolutely, vesting in them a clear right to sell and convey immediately, and as they might see fit.

Hardin and Preston Finley did sell and convey to Lively, and we deny that in such case the purchaser is bound to see to the application of the purchase money, or that the land in his hands is answerable to the plaintiff in error for any failure on the part of the Finleys to comply with the directions of the will for their benefit.

We think it clear, from the terms of the will, that it was not the intention of the testator to charge the land, in the hands of an innocent purchaser, with any such trust, and we suggest the following reasons: 1. If there was a trust we think we have shown that the Finleys had authority to sell; we take the position that even when there is a trust, "it must be of such a nature that the purchaser would reasonably be expected to see to the application of the purchase money. *Sugden on Vend.*, 2 vol., 36.

It is not to be expected that a purchaser would follow the devisees, or accompany them to the state of Illinois; accompany them in their researches for land, and attend to its purchase "in one or two tracts,"

and "plenty of timber to support it," such an expec-
tation is unreasonable. The grandsons, the com-
plainants, were young—seven and nine years old—
their education, &c., was to be given, &c. These
things show the unreasonableness of the application
of the principle to this case.

Again, if the trust is general or undefined, or the
nature of it requires that the money should remain in
the hands of the trustee for a time, for any other pur-
pose, or is subject to any unliquidated deduction in
his behalf, the purchaser is not bound to see to the
application of it.   1 *Greenleaf's Cruise on Real Proper-
ty*, side page 455–6, top page 424–5.

This trust required the money to remain in the
hands of the trustee.   The trust could not be speedi-
ly executed—its very nature required time for its ex-
ecution in all its parts.   And the money to be appro-
priated in lands was to be subject to a deduction of
the amount coming to the grandsons from their fath-
er's estate.

3. Another principle relied upon is, that payment to
the trustees was a sufficient payment, as it is when
money is to be paid to third persons, but to be ap-
plied upon trusts which require time and discretion, as
to lay out money in estates, &c.   2 *Sugden on Vend.*,
39; 2 *Story's Eq.*, page 538, sec. 1134; *Luring v. Pey-
ton*, 2 *Desausure*, 375; *Wormly v. Wormly*, 8 *Wheat.*
421.

Where the time of sale has arrived, and the persons
entitled to the money are infants or unborn, the pur-
chaser is not bound to see to the application of the pur-
chase money, because he would otherwise be impli-
cated in a trust which might be of long duration.
2 *Sugden on Vend.*, 39, and authorities there cited.

The fund necessary to be appled to the purchase of
the Illinois lands was to be, what the fund coming
to the grandsons of their father's estate might fall
short of paying for the quantity of land to be pur-
chased, that fund was uncertain.   *See Sugden on Vend.*
vol. 2, chap. 11, sec. 1.

The force of the doctrine of holding a purchaser bound to look to the application of the purchase money has been very much weakened in the United States—*see Cruise on Real Property, vol.* 1, *page* 424–5 —except in cases of fraud between trustee and purchaser; here there is no allegation of fraud. The doctrine as it now exists in this country will be found to rest upon these cases. *Potter v. Gardner,* 12 *Wheat.* 498, 502; 3 *Mason,* 308; *Andrews v. Sparhawk,* 3 *Pick.* 393–401.

The old doctrines relied upon by plaintiffs are exploded.

The legislature have recently declared, in the form of a statute, only what before in spirit and in fact was the law of the land. See *Revised Statutes, chap.* 106, *on Wills, sec.* 23, *page* 697.

We expect an affirmance.

Judge MARSHALL delivered the opinion of the court.

Samuel Finley, by his will admitted to record in June, 1832, after devising to his two sons, Hardin and Preston, land, slaves, and personalty constituting much the largest portion of his estate, says, in a subsequent and distinct clause, "It is my will and desire that my sons, Hardin and Preston Finley, out of the bequests above named, to them made, purchase for my grandchildren, Preston Sims and Addison Sims, six hundred acres of good arable lands, with a sufficiency of timber to support it, in one, two, or more tracts, as my sons may think best for the children, in some good part of the state of Illinois." To which he adds, "It is also my will and desire that they collect the sums due to my said grandchildren from the estate of their father, and that they have the use of that in the purchase of the land aforesaid;" and he says further in a succeeding clause, "It is also my will and desire that my two sons, Hardin and Preston, at their own expense, send the said Preston and Addison Sims to school, until they shall have received a good English education, and at the age of twenty-one years, each of

said boys receive of them a good horse, bridle, and saddle." And in the conclusion of the will he appoints his sons, Hardin and Preston, executors of his will.

The benefit intended to be secured to the two grandsons, by the clauses above quoted, is all that is given to them by the will; but their uncles, the devisees, sold the tract of land, of the value of $1,200, four slaves, of the value of $2,300, and personalty of considerable value, and left the country insolvent, without complying with the trust imposed on them with respect to these two nephews, or either of them. And in June, 1844, Preston Sims, having recently arrived at full age, filed his bill against them and their sureties, in their executorial bonds, and against Lively, who in 1839 had purchased the land devised to Hardin and Preston Finley, alleging that the land in Illinois was never purchased for himself and brother, and that neither of them had received the education or the horse, saddle, and bridle directed to be provided for them, and praying a decree against some or all of these parties by which he shall be compensated; Addison Sims was also made a defendant, and in May, 1845, he having attained full age, filed a cross-bill by which he in effect becomes a co-complainant with his brother, praying for the same relief and on the same grounds.

The defendants deny their liability; allege that the complainants had received or disposed of the funds coming to them from their father's estate, which, in any event, they claim as a credit, and Lively prays contribution from the purchasers of the slaves, whom he makes defendants to his cross-bill. A jury was impanneled to ascertain the value of the land devised to Hardin and Preston Finley, and also that of the slaves, and of the personalty, and to ascertain the value of the six hundred acres of land directed to be purchased in Illinois, and of the education, &c., to be furnished to each of the complainants—all of which was done. But on the hearing, the court being of

opinion that the executors had been guilty of no breach of duty in that character, and that the land sold to Lively was not liable for the default of the vendors, nor himself bound to see to the application of the purchase money, gave no decree against any of these parties, but decreed only against Hardin and Preston Finley, dismissing the bill as to the other defendants. The complainants seek a reversal of the decree dismissing their bills, and claim that they are entitled to relief either against the purchaser of the land, as having been bound to see to the application of the purchase money, or against the securities of the executors on account of the slaves and personalty which should or might have been applied to the objects plainly indicated by the will, or against all of these parties. But although the case of the complainants, if they cannot obtain relief on one or both of these grounds, is one of great hardship, and such a result will leave their grandfather's will in their favor wholly unaccomplished, we do not perceive any solid or safe ground for a decree against either the executorial sureties, or the purchaser of the land.

With regard to the first, it is sufficient to say that the will imposes upon the executors, as such, no duty whatever to be performed for the benefit of Preston and Addison Sims, or either of them. The whole duty, on this subject, is imposed upon the devisees, and none whatever upon the executors. If the executors had been different persons from the devisees, it would not have been the duty of the former to withhold from the latter any part of the property devised or bequeathed to them, at any rate, unless there were good grounds to believe that the devisees would not perform the duties required of them by the will, and which they were to perform in consideration of the property given to them, or out of it. Nor do we suppose that in any other case, if in that just stated, they would have had the right thus to withhold the property from the persons to whom the testator had given it, and in whom he had confided for the performance of

1. Where no duty is imposed upon an executor, as executor, but upon him as a devisee under the will, he is liable only as devisee, and not as executor, and there is no liability upon his sureties as executor.

the duties connected with the gift; and, although the devisees are also named as executors, and qualified as such, yet, as their rights and duties in these two capacities are as different as if the persons to whom they pertain were different, so ought their liabilities to be. Their delinquency is not as executors but as devisees, and, as they have committed no breach of duty as executors, there is no ground for holding their sureties liable for their failure as devisees.

Then, with respect to the liability of the land or of the purchaser, we observe, in the first place, that there is a marked difference in the language used in relation to the Illinois land and that used in relation to the education, and the horse, saddle, and bridle—the first is to be purchased out of the bequests made to testator's sons, with the aid of or in addition to the money coming to the grandsons from their father's estate, the others are to be furnished by testator's two sons, not out of the bequests made to them, but *at their own expense*, indicating clearly that it was to be out of their own property. If, then, it be conceded that the duty of purchasing the Illinois land is a trust or charge affecting the land devised to the sons, it would not follow, and could scarcely be admitted, that the furnishing of the education, and the horses, &c., stands on the same footing; and if it be assumed, which we do not decide, that the purchase of the Illinois land, and the other acts required of the two sons for the benefit of the grandsons, constituted a trust or charge affecting the land devised, it does not follow that this is such a charge or trust as would bind the land in the hands of the purchaser, innocent and ignorant of any fraud done or intended, or that it is such a charge or trust as would make such purchaser responsible for the application of the money which he had paid or was to pay in the purchase.

The will does not impose a direct and express lien upon the land devised, which, if it existed, would be obvious to any purchaser, and would justly follow the land. In terms it seems rather to impose a personal

2. Where the will provided that certain devisees, out of a devise of land and slaves made to them, with the aid of another fund, not certain, should purchase land in Illinois, and convey it to certain other persons, grandchildren of the testator, and also that the devisees, at their own expense, should educate said grandchildren—Held, that if there be a trust, (which is not decided,) it is not such a trust as would require that an innocent purchaser of the land, and ignorant of any fraud, should be bound to see to the application of the purchase money to the purchase of the Illinois lands.

3. Where there is an absolute devise of land to one, though he be appointed executor, and

SIMS
*vs.*
LIVELY.

though, in consideration of the devise, a personal duty be imposed upon the devisee, it is only by construction and inference that the conclusion is arrived at that the purchaser must look to the application of the purchase money. There is no lien—such lien or express trust as would apprise a purchaser of its liability. The inference of liability is subject to be rebutted by circumstances showing its unreasonableness. *Sugden, vol. 2, page 36.*

4. To impose on a purchaser the duty of seeing to the application of the purchase money, "the trust must be of such a nature that the purchaser would reasonably be expected to see to the application of the purchase money." Such will be the case where land is charged with the payment of particular d'bts; but if not specified he is not bound—nor where it is to pay debts and legacies, which

duty upon the devisees as the consequence or consideration of the devise, which in its own terms is absolute, and in such cases, it is only by construction or inference that the conclusion is arrived at, that the testator intended, or that equity requires, that the land should be bound in the hands of a purchaser, or that a purchaser must, at his peril, see to the application of the purchase money in performance of the trust. The land itself would not be directly bound unless there were a lien or such an expre ss trust upon it, as would apprise every purchaser of its liability; and where the obligation of the purchaser to see to the application of the purchase money is not clearly indicated by the will or other instrument of title, but is mere matter of equitable deduction or inference from the instrument of title, it must of course be subject to be rebutted or disproved by equitable consideration of greater weight, or by the unreasonableness of the inference, or of the duty or liability which it implies.

The principle contended for, as being asserted by Sugden in his treatise on vendors, vol. 2, page 36, that in order to impose on the purchaser the duty of seeing to the application of the purchase money, "the trust must be of such a nature that the purchaser would (or as we would say, could,) reasonably be expected to see to the application of the purchase money," is entirely conformable with the proposition just stated. And the recognised distinction, that where a will makes the payment of debts a charge upon land, a purchaser of the land will be bound for the application of the price, if the debts be scheduled, (that is, particularised,) but that if they be not scheduled, he will not be bound, seems to go upon the same principle that while a purchaser might easily see to the payment of scheduled debts, and might in fact pay them himself, it would be unreasonable to expect, and will not, upon presumption merely, be required that he should see to the payment of unscheduled debts, which would require the trouble of investiga-

tion and ascertainment. Upon the same principle, if the land be subjected to the payment of debts and legacies, the last of which can only be paid after the debts, the purchaser of the land will not be required to see to the application of the price, although the legacies be certain, because that would involve him in an inquiry into the condition of the debts and a settlement of the estate.

Of a similar nature is the doctrine admitted or asserted in the opinion of Judge Story, in *Wormley v. Wormley*, 4 *Wheaton*, 421; (5 *Condensed Report*, 481;) where the following language is used: "There is much reason (says the judge) in the doctrine, that where the trust is defined in its object, and the purchase money is to be re-invested upon trusts which require time and discretion, or the acts of sale and re-investment are manifestly contemplated to be at a distance from each other, the purchaser shall not be bound to look to the application of the purchase money, for the trustee is clothed with a discretion in the application of the trust fund, and if any persons are to suffer by his misconduct, it should be rather those who have reposed confidence than those who have bought under an apparently authorized act." And when we inquire for a reason why, in the case stated by Judge Storey, the purchaser should not be required to look to the application of the price, we find that so far as time and distance affect the conclusion, the doctrine has reference mainly to the convenience of the purchaser, and is founded on the unreasonableness of expecting him to be involved in a trust from which he could not, in a short time, and without any great trouble, be disengaged.

In this case time and distance and discretion were all involved in the investment required by the will to be made in the Illinois lands. If the proceeds of the sale of the land devised were to be re-invested in Illinois lands, under the requisitions of the will, then the case seems to come precisely up to that stated by Judge Story, as one in which the purchaser is not re-

5. Where a trustee is invested with a discretion in the disposition of a trust fund, those who have confided should rather suffer than one who has purchased of one apparently having authority.

6. Where a trustee, in the performance of a duty, has a discretion, and the performance to be at a distant point, and after the lapse of some ten or twelve years,

the purchaser is
not bound to
see to the ap-
plication of the
purchase mon-
ey—he had no
power over the
trustee to com-
pel its applica-
tion, nor means
of knowing
what propor-
tion of the de-
vise was neces-
sary to carry out
the intention of
the testator.—
There was no
lien upon the
land devised.

quired to see to the application of the price. If such re-investment was not required, there seems to be no ground for saying that the purchaser of the land devised was bound to see to the purchase of land in Illinois. There is, in fact, no reason to suppose that the testator intended or expected that a sale of the land devised would be resorted to for the means of purchasing the Illinois lands. It would be some ten or twelve years before his grandsons would be in a condition to take possession of the Illinois lands, and the sons had that period within which to make the purchase. They had, also, ample means under the will besides the land devised, and might well have been expected by the testator, by the use of the land and other means which he gave by his will, to make within the period allowed more than enough to purchase the Illinois lands and perform the other duties imposed for the benefit of the grandsons. Did the testator intend, or could it have been reasonably expected, that a purchaser of the land would be responsible for the uses made of all this property from the death of the testator, or that he would inquire into it? He could not himself purchase the Illinois lands according to the terms of the will, and could not compel the devisees to do it; neither could he ascertain what portion of the price of the land bought by him would be applicable to the purchase of the Illinois lands without ascertaining the debts, and in fact settling the estate of the father of the testator's grandsons, since it was only so much as what was coming to them from that estate lacked of supplying the means of purchasing the Illinois lands, that was to be taken out of the bequests made to the sons by the will. This ascertainment, upon the admitted principle applicable to unscheduled debts charged upon land, he was not bound to make; and on all these grounds we conclude that it would be unreasonable, and according to the authorities, inequitable to hold the purchaser in this case bound to see to the application of the purchase money of the land; and as we think there was

no lien which passed with the land into the hands of the purchaser. Therefore, the decree dismissing the bill as to him, and as to the sureties of the executors, is affirmed.